**BELKNAP, Appellant, v. BOWERS, Tax Commr., Appellee.**

Board of Tax Appeals, Department of Taxation, State of Ohio.

No. 33463. Decided June 20, 1957.

A. Glenn McClelland, for appellant.

William B. Saxbe, Atty. Genl., by Chester Hummell, Asst. Atty. Genl., for appellee.

### OPINION

This appeal is from a final order of the Tax Commissioner, under date of November 29, 1956, wherein the Commissioner denied appel-

lant's application for a refund of sales taxes paid in the sum of $1617.00.

The cause now comes on for further and final consideration upon appellant's notice of appeal, the Commissioner's transcript and order made, the record of a hearing had on April 3rd, last, and briefs of counsel.

The period of time covered by the claim extends from January 1, 1948 to December 31, 1952, inclusive. During the hearing had the taxpayer abandoned all that portion of his claim covering the period of time prior to September 25, 1951. As appellant stated in his brief:

"The reason for this abandonment was the mistaken belief that the application for prepayment and the journal entry which made the rate of tax dependent upon a spot check was in fact dated in September of 1951, rather than in 1948."

There is an overture to the present claim which must be understood in order to appreciate what is here attempted to be accomplished. Vendor since 1935 has had exclusive concession contracts for athletic events sponsored by the Athletic Department of Ohio State University; for the sale of soft drinks, ice cream, candy and the like. Due to the method and nature of making these sales, the vendor had been granted successive permits by the Tax Commissioner for prepayment of sales tax upon a percentage basis as he is authorized to do. Pursuant to the holding of the court in **Cleveland Concession Co. v. Peck, 159 Oh St 480, 50 O. O.** 396, this concessioner filed a previous application for refund and thereby eventually secured a refund of $8,573.76, see Case No. 25845 before this Board. B. T. A. Journal 52, page 640, affirmed ·in **Belknap v. Bowers, 163 Oh St 72, 56 O. O. 59.** We now quote the following from appellant's brief:

"Commencing with September 24, 1951, and extending through December 31, 1952, the rate was 4% of 33 1/3% of the vendor's gross sales but 'subject to spot checks and revision up or down at the end of 1951 season.' No spot check or study of the vendor's actual sales operation was made until September 24, 1955, as a result of which it was determined that only 6% of vendor's total sales were taxable rather than the 33 1/3%, the basis upon which the vendor had been remitting.

"The gist of this claim is, therefore, that the refund actually made was insufficient and that an actual rate study reflects exactly what the refund should have been for the year and one-third in question."

Appellant argues further, page 2 of his brief:

"Can a vendor base a claim for refund of Ohio sales tax claimed to have been erroneously paid by applying the results of a subsequent rate study to the volume of sales made in earlier years? I think the answer is quite apparent that such cannot be done; that the rate as applied for and journalized are conclusive. The very apparent·exception is here presented. Reference is made to the application of the vendor dated September 25, 1951, wherein the Sales Tax Section of the Department of Taxation insisted upon the inclusion of the phrase 'subject to spot checks and revision up or down at the end of 1951 season.' This was inserted for the express purpose of making a rate study to determine that the State was getting the proper amount of tax yield on this operation. The rate was consequently tentative and substantially the

same language was incorporated into the entry by which this vendor was authorized to prepay the sales tax. Too, the same application and entry remained in effect through the entire calendar year 1952."

We do not find at any place within the record, exhibits or transcript, any evidence to the effect that the Sales Tax Department insisted upon the inclusion of the wording about which the controversy centers. The Taxpayer's application of September 24, 1951, for permission to prepay sales tax reads a bit different than appellant's argument. The application states:

"The applicant, or applicants, states that the rate of tax which he, they, or it shall pay to the State upon the receipts he receives from his gross taxable sales is 4 per centum of 33 1/3% of Gross Sales (No deductions) subject to spot checks and remission up or down at end of 1951 season."

By whom or when this language was written in this application we do not know in the absence of any evidential proof thereof. Neither are we advised whether or not this is a usual or an unusual phrase in like applications. Since appellant or his counsel drew this document we must and do assume that they formulated these words. We do note that the Commissioner's entry of October 2, 1951, approving of the application, includes the same words. Appellant recognizes that a Tax Commissioner's journal entry approving an application for permission to prepay sales tax is prospective in character and not retrospective. But he contends that the language used creates an exception. Appellant knew that his tax would be 4% of 33 1/3% of his gross sales until the end of his 1951 season. He also knew that the Commissioner had the power to and might make a spot check and establish a greater or less percentage for the 1952 season. He knew that if he was dissatisfied with the amount of his tax in 1951 that he could at any time thereafter make an application for establishment of a new percentage figure for 1952 or any year thereafter. He knew that his tax for the 1951 season would be no more or no less than the journal order established. Irrespective of who wrote these words in the application and journal for 1951, they constitute an agreement fixing the taxable percentage figure for that year and each year thereafter, so long as the Commissioner and the Taxpayer were both satisfied therewith. By the order made the taxpayer secured a special privilege. It was not conditioned upon any subsequent recheck which might fix tax percentages for a subsequent and future period only.

As we see it the rebate paid the taxpayer previously was a finality upon the remand. If appellant was not fully satisfied with the result of his claim for refund, he should then have appealed therefrom. There is nothing tentative in the order of 1951. He is not entitled to any further rebate under his 1951-1952 sales. The Tax Commissioner did not err in his order complained of, and the same is hereby affirmed.